IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| RANDALL ALLAN COUNTS | § | |
| v. | § | CIVIL ACTION NO. 6:23cv295 |
| DIRECTOR, TDCJ | § | |

REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE

The Petitioner Randall Counts, an inmate of the Texas Department of Criminal Justice, Correctional Institutions Division proceeding *pro se*, filed this application for the writ of habeas corpus purportedly under 28 U.S.C. §2241 complaining of the legality of his confinement as well as other claims. The petition has been referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. §636(b)(1) and (3) and the Amended Order for the Adoption of Local Rules for the Assignment of Duties to United States Magistrate Judges.

**I. Background**

Petitioner states that he executed a "sentence performance contract," apparently meaning a plea agreement, in Grayson County in 2006. He says that the judge ordered his safe taking and conveyance to TDCJ, but says that the Director has "no authority outside of the S.P. contract's orders, which obligate performance under TDCJ's rules, regulations, procedures, and policies."

Petitioner complains that he was placed in 12 Building, F Pod, 28 cell, known as "restrictive housing" but really administrative segregation, against his will, in violation of TDCJ rules. He explains that on May 17, 2023, he was walking in 8 Building when Sgt. Bankole ordered him to submit to hand restraints for escort to the medical department in 10 Building for a pre-hearing detention physical. When they arrived at 10 Building, without a video camera operator or video footage as required by TDCJ rules, Sgt. Bankole asked him "how did the crossover door get open?"

Petitioner states that his own ignorance of the incident angered Sgt. Bankole, who threatened to illegally place him in 12 Building as a level 3, the most restrictive housing, and destroy Plaintiff personal property which he had to leave behind. Sgt. Bankole then took Plaintiff to 12 Building, placed him on Level 3, and destroyed his hot pot, fan, photographs, and other personal items.

On June 6, 2023, Petitioner states that a counsel substitute came to his assigned housing with a disciplinary case charging him with tampering with the crossover door locking mechanism by pulling the door open to another section. Petitioner states that he was on 8 Building I Pod 2 section and he did "causally walk through the open section door that connects 2 Section to 3 Section." The counsel substitute told him that she likely would not be able to review the video evidence which would not only prove his innocence but would incriminate the sergeant for falsifying government documents.

Next, Petitioner complains that the grievance process "perpetuated restraint," because those investigators are the only ones who can review the video footage, obtain witness statements, and maintain "things relative to court proceedings." He states that the Respondent allows the grievance procedure to be "turned off without notice" and allows staff shortages which demand that he be unlawfully restrained. Petitioner asserts that his illegal restraints "occurred without due course require [sic] notice or hearing." He adds that the rights suspended during the pandemic have not been restored, meaning that being placed in segregation indefinitely for no reason or any reason is an acceptable method of punishment.

Petitioner asserts that he is restrained in an "atypical manner" designed to create hardships to compel him and others similarly situated to refuse orders or otherwise "act out in a negative seeming manner." He says that he is perpetually restrained from his lawful exercise of the inmate property policy.

Petitioner argues that there has been a "drastic change of the terms and conditions of the contract," especially during the Covid-19 lockdown, so a breach of contract has occurred. Had he known of the "real consequences," he would not have made the contract with the State but would

have exercised his right to go to trial. As it stands, however, he states that he must "suffer criminalizing false reports by staff, constant illegal takings of his protected property, restraint in exercising meaningful access to court by maintenance of material evidence, Respondents enacting enforcement of outdated TDCJ rules that overtly demand constitutional violations and illegal restraints."

For relief, Petitioner asks that the writ of habeas corpus issue, for a declaratory judgment of his rights under the state and federal constitutions, release from administrative segregation, expungement of disciplinary cases illegally handled, a remand to the county to renegotiate his contract, and such other and further relief as may be deemed necessary.

Petitioner attaches a declaration saying that he is being held on charges of aggravated sexual assault of a child, for which he received 10 years deferred probation, but was later sentenced to 20 years in TDCJ.  He says that "I did not know that my time in TDCJ was to be judged by performance to TDCJ rules, policies, and regulations."  He says that he has been placed on restrictive housing five times, although he gives the date of the first such placement - apparently in error - as November of 2023. He has also been placed in restrictive housing in late 2020, in July of 2021, in February of 2023, and then in May of 2023.  Petitioner says that his latest placement in restrictive housing was for refusing to tell on a person who opened the crossover door that he walked through.  He states that Sgt. Adeniran "took it upon himself to place me in 12 Building F Pod ad seg on Michael Unit," where he is treated as an ad seg offender, Level 3," even though he says that he is not an ad seg offender.  He complains of the conditions of confinement in administrative segregation and says that he is not receiving adequate medical care for bipolar disorder or gender identity disorder.

Petitioner complains of the living conditions during the Covid-19 lockdown, which he says caused him to suffer from extreme bouts of depression and anxiety and says that if he had known that he would go through this and suffer this mental and emotional abuse, he would not have signed the plea contract. He contends that the prosecutor did not warn him that his constitutional rights would be suspended indefinitely.

Petitioner acknowledges that TDCJ provides a disciplinary procedure, saying that an officer will come notify the inmate that a disciplinary case was written, and ask for the inmate's statement. This is turned in to the disciplinary department, which decides if the case is minor or major.  If it is major, the counsel substitute will serve the inmate with the case, but the counsel substitutes at the Michael Unit like to wait until the last day to serve the case so the video surveillance video cannot be used.

In disciplinary case no. 202301213728, in which Petitioner was charged with being out of place on April 3, 2023, he says that he went through the disciplinary process from April 13 to May 10, 2023, and was found guilty of the case.  The copy of the case which Petitioner attaches indicates that he received cell and commissary restrictions and remaining in Line Class III, but did not lose any good time.

In case no. 20230174103, Petitioner states that started the disciplinary process on June 6, 2023, which is 11 days before he signed his petition on June 17. He contends that the whole disciplinary process is a fraud to find inmates guilty of any charges brought against them.

Petitioner similarly contends that the TDCJ grievance procedure is inadequate because even when "proven beyond a shadow of a doubt" that his rights were violated, the grievances get a run of the mill answer to protect the staff and deny his constitutional rights. He insists that he did not get a notice or hearing of any adequate value before his rights were suspended, nor did he get a chance to appeal. He says that he has no adequate remedy in law for being in restrictive housing without notice, nor did he get a hearing.

The next exhibits attached by Petitioner are the disciplinary cases he received. In case no. 20230174103, with an offense date of May 17, 2023, Petitioner was charged with tampering with the crossover door locking mechanism by pulling the door open to another section.  He was notified at 10:50 a.m. on June 6, 2023.

In case no. 20230143728, with an offense date of April 3, 2023, Petitioner was charged with being out of place and gaining exit from a secure cell. He was notified of the charge on April 13,

2023.  Petitioner was found guilty at a hearing and punished with cell and commissary restrictions, although he did not lose any good time.

In a memorandum and brief, Petitioner states that he was placed in 12 Building restrictive housing without notice, a hearing, or a right of appeal.  He contends that these restraints require the renegotiation of his plea contract because he is "receiving none of the benefits of the plea bargain as it turns out due to the perpetual state of punishment that he has been forced to endure, with no way to resolve even the smallest issues."

Petitioner asserts that he has been incarcerated for over 17 years. He claims that he has a liberty interest in "not having false statements, reports, and evidence presented at a disciplinary hearing," citing *U.S. v. Wallace*, 673 F.Supp. 205 (S.D.Tex. 1987).  Petitioner contends that the fact he is sitting in segregation is "an atypical and significant hardship in relationship to what should be happening," which is notice and a meaningful hearing before placement in segregation, notice and a hearing before suspensions of grievances or disciplinary processes, and "updated TDCJ rules that remove the necessity of staff or performances that cannot be supplied as is shown by the records regarding prolonged staff shortages that illegally restrain exercise of constitutional rights." He argues that he has a protected liberty interest in adequate staffing and in having staff which make "constitutionally adequate performances." He contends that "the Respondents have created a culture of abuse that punishes Petitioner for adjusting to the lawless style of administration that permeates the Texas penal system [sic]."

**II. Discussion**

A. The Challenge to his Conviction

Petitioner appears to contend that his plea agreement should be set aside and that he should be allowed to "re-negotiate" due to the conditions of confinement within TDCJ. This Court has explained that

> Plaintiff has not identified any viable legal theory under which his 2011 plea of guilty to criminal charges constituted a contract for any particular level of amenities or liberties in prison, as distinct from a separate term of imprisonment. He cites no provision in his plea agreement or criminal judgment regarding the day to day

conditions of his incarceration, and it is obvious that none of the defendants to this action were parties to his plea agreement. Moreover, his 'contract' claim, which would effectively prevent prison officials from ever making any material changes in prison policy, procedure, or facilities once an inmate has pleaded guilty, is contrary to the established law that 'prison officials are experts in running prisons and evaluating the likely effects of altering prison rules, and courts should reflect that expertise.' *Holt v. Hobbs*, 574 U.S. 352, 364 (2015).

*Garcia v. Lumpkin*, civil action no. 6:22cv279, 2022 WL 18491899 (E.D.Tex., December 22, 2022).

In addition, a review of online Texas judicial records from Grayson County and the Texas Court of Criminal Appeals shows that Petitioner did not appeal his conviction, nor has he sought collateral review of this conviction. A petitioner must fully exhaust state remedies before seeking federal habeas relief. 28 U.S.C. § 2254(b). To exhaust in accordance with § 2254, a petitioner must fairly present the factual and legal basis of any claim to the highest available state court for review prior to raising it in federal court. *Nickleson v. Stephens*, 803 F.3d 748, 753 (5th Cir. 2015). In Texas, a prisoner must present his claim to the Texas Court of Criminal Appeals in a petition for discretionary review or an application for writ of habeas corpus. *Myers v. Collins*, 919 F.2d 1074, 1076 (5th Cir. 1990) (exhaustion may be accomplished directly in a petition for discretionary review or collaterally in a habeas corpus petition); *Bautista v. McCotter*, 793 F.2d 109, 110 (5th Cir. 1986).

The Fifth Circuit has held that a federal district court may raise the lack of exhaustion *sua sponte. Shute v. State*, 117 F.3d 233, 237 (5th Cir. 1997). Where the petitioner fails to exhaust state remedies, the federal district court may dismiss the petition without prejudice. *Rose v. Lundy*, 455 U.S. 509, 510, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982); *Mercadel v. Cain*, 179 F.3d 271, 274 (5th Cir.1999) (*per curiam*). This is because as a matter of comity, the state courts must be given a fair opportunity to hear and consider the claims raised by an applicant before those claims are heard in federal court. *Picard v. Connor*, 404 U.S. 270, 275, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971). To the extent Petitioner challenges his criminal conviction, his claims should be dismissed without prejudice for failure to exhaust state remedies.

B. The Disciplinary Cases

Petitioner points to two disciplinary cases which he received, no.'s 20230174103 and 20230143728. Case no. 20230174103 appears to still be ongoing at the time Petitioner filed his petition, since he had received it only 11 days before; his claim for habeas corpus relief concerning this disciplinary case lacks merit because it is premature.

In case no. 20230143728, the documents attached by Petitioner show that he did not lose any good time. In any event, Petitioner states and TDCJ records show that he is serving a sentence for aggravated sexual assault of a child, rendering him ineligible for release on mandatory supervision. The issue concerning this disciplinary case concerns whether or not Petitioner has demonstrated the denial of a constitutionally protected liberty interest. The Supreme Court has held that the States may, under certain circumstances, create liberty interests which are protected by the Due Process Clause, but these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life. *Sandin v. Conner*, 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995).

While some prior cases held that the mandatory or discretionary language of the regulations involved determined whether or not a liberty interest existed, the Supreme Court announced in *Sandin* that this analytical framework has "strayed from the real concerns undergirding the liberty protected by the Due Process Clause." Rather than examining the language of the regulations, the Supreme Court specifically disapproved of the mandatory or discretionary language analysis, stating that the operative interest involved was the nature of the deprivation. *Id.*, 515 U.S. at 473 and n.5. In other words, those deprivations - the punishments imposed as a result of the challenged disciplinary case - which do not exceed the prisoner's sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, and which do not impose atypical

or significant hardships upon the prisoner in relation to the ordinary incidents of prison life, do not implicate any constitutionally protected liberty interests.

The Supreme Court cited *Vitek v. Jones*, 445 U.S. 480, 493-94, 100 S.Ct. 1254, 63 L.Ed.2d 552 (1980) (transfer to mental hospital triggers Due Process Clause) and *Washington v. Harper*, 494 U.S. 210, 221-222, 110 S.Ct. 1028, 108 L.Ed.2d 178 (1990) (involuntary administration of psychotropic drugs implicates Due Process Clause), as examples of restraints which trigger the Due Process Clause of their own force, but stated that the incarceration in disciplinary segregation present in *Sandin* did not create the type of deprivation in which the State might have created a liberty interest. *Sandin*, 515 U.S. at 479 n.4, 481-82. As a result, the Supreme Court held that neither the prison regulations at issue nor the Due Process Clause itself afforded the inmate a protected liberty interest entitling him to the procedural protections of *Wolff v. McDonnell*, 418 U.S. 539, 563-66, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). *Sandin*, 515 U.S. at 487. The fact that the plaintiff in *Sandin* was not permitted to call witnesses at his disciplinary hearing was not sufficient to accord him relief because no protected liberty interest was at stake.

The punishments imposed upon Petitioner included cell and commissary restrictions and retention in his current classification status. None of these punishments exceeded Petitioner's sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nor did they impose atypical or significant hardships in relation to the ordinary incidents of prison life. *See Malchi v. Thaler*, 211 F.3d 953, 958 (5th Cir. 2000) (cell restrictions do not implicate a protected liberty interest); *Wilson v. Budney*, 976 F.2d 957, 958 (5th Cir. 1992) (no protected liberty interest in custodial classification); *Lewis v. Dretke*, 54 F.App'x 795, 2002 U.S. App. LEXIS 28227, 2002 WL 31845293 (5th Cir., December 11, 2002) (30 days of cell and commissary restrictions, including restrictions of recreation and attending religious services and library sessions, plus 90 days of telephone restrictions, 15 days of solitary confinement, and reductions in classification and custodial status did not implicate any protected liberty interests). Although Petitioner cites *U.S. v. Wallace*, 673 F.Supp. at 206, as saying that prisoners have a liberty

interest in not having false evidence presented in a disciplinary hearing, this case pre-dates *Sandin* and thus has little or no precedential value. *Alexander v. Director, TDCJ-CID*, civil action no. 6:07cv274, 2007 U.S. Dist. LEXIS 48317, 2007 WL 1989754 (E.D.Tex. July 3, 2007); *see also Spellmon v. Price*, 100 F.3rd 953, 1996 U.S. App. LEXIS 43304, 1996 WL 625422 (5th Cir., October 10, 1996) (rejecting inmate's reliance on *Wallace*).

Because none of the deprivations imposed upon Petitioner implicated any constitutionally protected liberty interests, his claim for habeas corpus relief regarding disciplinary case no. 20230143728 is without merit. *See Toney v. Owens*, 779 F.3d 330, 336 (5th Cir. 2015) (the procedural protections of the Due Process Clause are triggered only where there has been a deprivation of a constitutionally protected life, liberty, or property interest).

C. Non-Habeas Claims

Petitioner also raises a number of claims which do not implicate the legality of his confinement and thus do not set out a valid basis for habeas corpus relief. *Pierre v. U.S.*, 525 F.2d 933, 936 (5th Cir. 1976) (the purpose of habeas corpus is to grant relief from unlawful imprisonment or custody and cannot be used for any other purpose, including adjudicating matters foreign to the question of the legality of custody); *accord*, *Cook v. Hanberry*, 596 F.2d 658, 660 n.1 (5th Cir. 1979). These include his complaints of the conditions of confinement in administrative segregation, the living conditions during the Covid-19 lockdown, and his claims concerning his medical care for bipolar disorder or gender identity disorder.

These claims should be dismissed without prejudice to Plaintiff's right to raise them in a separate lawsuit under the Civil Rights Act, 42 U.S.C. §1983. Such a lawsuit would be subject to the filing fee and other requirements of the Prison Litigation Reform Act. *See Howard v. Director*, TDCJ, civil action no. 9:11cv148, 2013 U.S. Dist. LEXIS 58903, 2013 WL 949380 (E.D.Tex., February 6, 2013), *Report adopted at* 2013 U.S. Dist. LEXIS 32847, 2013 WL 943437 (E.D.Tex., March 8, 2013, no appeal taken) (prisoners cannot evade the filing fee requirements of the Prison Litigation Reform Act by filing civil rights claims in habeas corpus petitions).

If Petitioner wishes to pursue these claims, he may file a separate lawsuit on his own or request that the Court sever such claims out of this habeas petition into a separate lawsuit. The Court offers no opinion as to the ultimate merits of such a lawsuit.

## Certificate of Appealability

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding unless a circuit justice or judge issues a certificate of appealability. 28 U.S.C. §2253(c)(1)(A). A district court may deny a certificate of appealability *sua sponte* because the district court that denies a petitioner relief is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before that court. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000).

The prerequisite for either a certificate of probable cause or a certificate of appealability is a substantial showing that the petitioner has been denied a federal right. *Newby v. Johnson*, 81 F.3d 567, 569 (5th Cir. 1996). This requires a showing that the issues are debatable among jurists of reason, that a court could resolve the issues in a different manner, or that the questions are adequate to deserve encouragement to proceed further. *James v. Cain*, 50 F.3d 1327, 1330 (5th Cir. 1995).

Petitioner has not shown, nor does it appear from the record, that the issues are debatable among jurists of reason, that a court could resolve the issues in a different manner, or that the questions presented are adequate to deserve encouragement to proceed further. He is not entitled to a certificate of appealability.

## RECOMMENDATION

It is accordingly recommended that the above-styled application for the writ of habeas corpus be dismissed with prejudice as to Petitioner's claim concerning disciplinary case no. 20230143728, and without prejudice as to all other claims in the case, including Petitioner's claims concerning the conditions of his confinement and his medical care. It is further recommended that the Petitioner Randall Counts be denied a certificate of appealability *sua sponte*.

A copy of these findings, conclusions and recommendations shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendations must file specific written objections within 14 days after being served with a copy.

In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's proposed findings, conclusions, and recommendation where the disputed determination is found. An objection which merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific, and the district court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Commission*, 834 F.2d 419, 421 (5th Cir. 1987).

Failure to file specific written objections will bar the objecting party from appealing the factual findings and legal conclusions of the Magistrate Judge which are accepted and adopted by the district court except upon grounds of plain error. *Duarte v. City of Lewisville*, 858 F.3d 348, 352 (5th Cir. 2017).

So ORDERED and SIGNED this 28th day of June, 2023.

_____
K. NICOLE MITCHELL
UNITED STATES MAGISTRATE JUDGE